# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| AMTRUST NORTH AMERICA, INC., a Delaware corporation; and TECHNOLOGY INSURANCE COMPANY, INC., a New Hampshire corporation,<br><br>Plaintiffs,<br><br>-vs-<br><br>SAFEBUILT INSURANCE SERVICES, INC., a California corporation a/k/a SAFEBUILT WHOLESALE INSURANCE SERVICES, INC., *et al.,*<br><br>Defendants. | MC 16-1-BLG-CSO<br><br><br>**ORDER** |
| SAFEBUILT INSURANCE SERVICES, INC., a California corporation a/k/a SAFEBUILT WHOLESALE INSURANCE SERVICES, INC., *et al.,*<br><br>Plaintiffs<br><br>-vs-<br><br>AMTRUST NORTH AMERICA, INC., a Delaware corporation; and TECHNOLOGY INSURANCE COMPANY, INC., a New Hampshire corporation,<br><br>Defendants. | MC 16-2-BLG-CSO<br><br><br>**ORDER** |

I.   **BACKGROUND**

   A.   **MC 16-1-BLG-CSO**

Amtrust North America, Inc., and Technology Insurance Company, Inc. ("AmTrust Parties"), acting through counsel in a case venued in the United States District Court for the Southern District of New York, Civil Action No. 14-cv-9494 ("SDNY Litigation"), served a subpoena on Moulton Bellingham, PC ("Moulton Bellingham"), on October 9, 2015. *ECF No. 7-1* (*MC 16-1*).[1]  Moulton Bellingham, Pacific Re's counsel in Montana, initially responded to the subpoena on November 23, 2015. *ECF No. 10* (*MC 16-1*).

> The subpoena sought, *inter alia:*
>
> All non-privileged documents, records and communications with the Office of the Montana State Auditor, Commissioner of Insurance and Securities concerning Pacific Re, Inc.'s protected cell Pac Re 5-AT and specifically as it relates to cell formation, cell funding, cell merger, policy fees, reported premium, business plan approvals, business plan amendments, policy language approvals, and policy language amendments.

*ECF No. 7-1* at 9 (*MC 16-1*).  Moulton Bellingham responded to this

---

[1] "*ECF No.*" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3.*  References to page numbers are to those assigned by ECF.

request with documents numbered as MB 54-145. These documents included a Report of Examination of Pacific Re, Inc., dated December 31, 2012, as well as other documents concerning the Montana Commissioner of Securities and Insurance office ("CSI"). *ECF No. 10 at 4* (*MC 16-1*).

But on January 8, 2016, Moulton Bellingham sent Plaintiffs a letter requesting that the documents produced identified as MB 54-73 and MB 74-121 (the "Documents") be returned and all copies destroyed. *ECF No. 4-5 (MC 16-1).* Moulton Bellingham argues that this attempt to claw back the Documents is based on their confidential nature, as provided in MCA § 33-28-108(3).

Now pending in this action is Plaintiffs' motion to enforce the subpoena and compel discovery of the Documents. *ECF No. 1* (*MC 16-1*). The named Defendants are SafeBuilt Insurance Services, Inc., The Taft Companies, LLC, Preferred Global Holdings, Inc., David E. Pike, David E. Pike, Inc., Philip Salvagio, Salmen Insurances Services, Inc., Carl M. Savoia, and John Does (hereafter referred to, with Pacific Re, Inc., as "Safebuilt Parties"). This motion essentially asks whether the Documents may be clawed back based on the confidentiality portion of

MCA § 33-28-108(3).

The Court heard oral argument on the motion on April 8, 2016.

**B.     MC 16-2-BLG-CSO**

The AmTrust Parties, as Plaintiffs in MC 16-2, served another subpoena in Montana in case number 14-9494, the SDNY Litigation. This subpoena was issued on March 2, 2016, to CSI. *ECF No. 2-1 at 3 (MC 16-2)*. This subpoena requested witness testimony regarding:

> 1. Creation, formation and approval of Pac Re Cell 5-AT of Pacific Re, Inc.
>
> 2. Taft's request for and the approval and merger of Cell 5-AT into the core.
>
> 3. Reversal of Cell 5-AT merger into the core.
>
> 4. Pacific Re, Inc. and Preferred Contractors Insurance Company, RRG Inc. ("PCIC") policy wording changes and approvals from July 1, 2011 through May 31, 2012.
>
> 5. The Examination of Pacific Re, Inc. as of December 31, 2012 and subsequent Orders of Supervision.

*ECF No. 2-1 at 6* (*MC 16-2*).

The CSI deposition was completed on March 16, 2016, over the objections of the Safebuilt Parties.

Now pending is the Safebuilt Parties' motion for a protective order, to quash subpoena to CSI, for a discovery stay, and for the motion

to be transferred to the SDNY Litigation. *ECF No. 1* (*MC 16-2*).

## II. PARTIES' ARGUMENTS

### A. MC 16-1-BLG-CSO

The AmTrust Parties argue that Moulton Bellingham cannot claw-back the CSI examination report or the Orders of Supervision. They argue that: (1) all materials related to CSI's examination of Pacific Re are discoverable based on a court order in the SDNY Litigation, *ECF No. 9* at 14–15 (*MC 16-1*); (2) Pacific Re has consented to the disclosure of the documents under the Captive Reinsurance Agreement, *id.* at 15; (3) this Court should order the production of the documents, *id.* at 15–17; (4) the Examination Report is public as a matter of law because the statute requires an examination report to remain confidential for only thirty days before becoming open for public inspection, *id.* at 17; and (5) public policy considerations demonstrate the Examination Report should be public, *id.* at 18.

The Safebuilt Parties argue that the motion to compel should not be granted. They argue that: (1) Pacific Re's examination is privileged because it was a non-public examination, *ECF No. 18* at 12–13 (*MC 16-1*); (2) there are no relevant rulings in the SDNY Litigation, *id.* at 14–

16; (3) they have not consented to the disclosure of the privileged documents, *id.* at 17–18; (4) the underlying facts are obtainable from an alternate, non-privileged source, *id.* at 19; (5) the examination report was created years after the end of the program at issue in the SDNY Litigation and the request is overly broad, *id.* at 20; (6) there is no basis to show the privilege was breached, *id.* at 21–27; (7) they should be seeking relief in the SDNY, *id.* at 18; and (7) public policy mandates communications between insurers and regulators be protected, *id.* at 27–29.  They also argue that the AmTrust Parties' motion lacks a nexus to this jurisdiction, and includes improperly named parties that are not the target of the subpoena.  *Id.* at 5, 18.

The Amtrust Parties respond that:  (1) there is not an insurance examination privilege in Montana, because the statue only makes examinations confidential, *ECF No. 23* at 11–16 (*MC 16-1*); (2) this jurisdiction is the correct place for this request because it is the district in which compliance would occur and the issues are based on Montana law, *id.* at 16–17; (3) the parties named in this action are the same as in the SDNY Litigation, and were named to provide notice, *id.* at 17; and (4) Plaintiffs have not conceded that Moulton Bellingham's

interpretation of "privilege" in this context was appropriate, *id.* at 18.

### B. MC 16-2-BLG-CSO

The Safebuilt Parties argue here that: (1) the subpoena seeks overbroad, privileged, and confidential information, *ECF No. 1* at 14–19 (*MC 16-2*); (2) the subpoena would subject Plaintiffs to unnecessary annoyance and embarrassment, *id.* at 19–21; (3) enforcement of the subpoena would be disproportionate to the underlying litigation, *id.* at 21–23; (4) Rule 45[2] prohibits enforcement of the subpoena, *id.* at 24–25; (5) this motion should be adjudicated in the SDNY Litigation, *id.* at 25; (6) enforcement of the subpoena should be stayed immediately, pending adjudication of the subpoena's propriety and the related motion to compel, *id.* at 25–34.

The AmTrust Parties respond that: (1) only Pacific Re has standing to file the motion to quash and only on the ground of "privilege", *ECF No. 3* at 14–17 (*MC 16-2*); (2) the Montana statute does not create a "privilege", *id.* at 17–22; (3) interpreting a Montana statute does not warrant and transfer to New York because there is no consent

---

[2] References to the Rules are to the Federal Rules of Civil Procedure, unless otherwise noted.

nor extraordinary circumstances, *id.* at 22–24; and (4) Pacific Re's gamesmanship mandates denial of the stay and triggers 28 U.S.C. § 1927, because the deposition notice was served on March 2, 2016, CSI did not object, and the AmTrust parties did not act with any urgency prior to belatedly filing this action, *id.* at 24–27.

In reply, the Safebuilt Parties argue that: (1) the Plaintiffs all have standing because the subpoena seeks financial information directly related and vital to Plaintiffs' business and would lead to disclosure of their business practices, giving competitors an advantage; (2) the subpoena seeks impermissible discovery because it is seeks overbroad, privileged, and confidential information pursuant to, among other things, MCA § 33-28-108-(3); (3) the subpoena would subject them to unnecessary annoyance and embarrassment; and (4) the request is disproportionate to the underlying SDNY action. *ECF No. 8 at 4–12 (MC 16-2)*.

The Safebuilt Parties argue that Rule 45 prohibits CSI from testifying as to privileged or private documents and communications, and the subpoena seeks testimony related to the Safebuilt Parties' sensitive commercial and/or financial information, and sensitive

business information of non-parties. *Id.* at 12–13. They argue that the information cannot be obtained from CSI because Pacific Re did not consent to the disclosure of the privileged documents. *Id.* at 14.

Finally, the Safebuilt Parties argue this motion should be transferred to SDNY to ensure consistent rulings, preserve judicial economy, and permit the court with the most experience and knowledge of the facts rule on it. *Id.* at 16–17. They argue that sanctions would also be improper because there was no delay, nor any excess cost or expense associated with the motion. *Id.* at 17–18.

### III. <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure require that a subpoena must issue from the court where the action is pending. Fed. R. Civ. P. 45(a)(2). If timely objection is made to the subpoena, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). Additionally, on a timely motion, "the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(d)(3)(A). When a

motion is made regarding a subpoena to a compliance court, and the compliance court did not issue the subpoena, it may transfer the motion to the issuing court "if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).

The Advisory Committee's Note to Rule 45(f) provides guidance in determining whether exceptional circumstances exist, warranting transfer to the issuing court. The note provides that:

> In the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present. The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Fed. R. Civ. P. 45(f) Advisory Committee Note (2013).

This Advisory Committee Note makes clear that a prime factor in deciding whether to transfer an action under Rule 45(f) is consideration of burdens on local nonparties subject to the subpoena. But these

burdens "must be balanced with the interests in ensuring the efficient, fair and orderly progress of ongoing litigation before the issuing court." *Obesity Research Institute, LLC v. Fiber Research International, LLC*, 3016 WL 593546, \*3 (D. Nev. 2016) (quoting *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014)). "Ultimately, the Court must balance the interest of local resolution against factors such as judicial economy and risk of inconsistent rulings." *Venus Med. Inc. v. Skin Cancer & Cosmetic Dermatology Ctr. PC*, 2016 WL 159952, at \*2 (D. Ariz. Jan. 14, 2016) (citing *Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 429–430 (N.D. Cal. 2014)).

## IV.   DISCUSSION

As noted, both subpoenas at issue here were issued in the SDNY Litigation. The subpoena in MC 16-1-BLG-CSO was issued on a local nonparty, Moulton Bellingham. The subpoena in MC 16-2-BLG-CSO was issued to another local nonparty, CSI. The record does not clearly reflect that either entity consents to transfer these actions to the SDNY, although Moulton Bellingham, in its capacity as counsel for the Safebuilt Parties, does request such a transfer. Accordingly, the Court will consider whether the actions should be transferred to the SDNY

based on the "exceptional circumstances" test.

In considering possible burdens on the local nonparties subject to the subpoenas, the Court here notes that neither nonparty recipient initially objected to the subpoena nor is either recipient a party to these actions. Neither has appeared in this Court seeking to be heard. The factor weighs in favor of transfer.

The Court is cognizant that resolution of these disputes might require interpretation of unresolved issues of Montana law. But any Montana interest this might create is outweighed by other factors at issue that are better resolved in the SDNY Litigation. These factors include: (1) judicial economy; (2) risk of inconsistent rulings; and (3) discovery management in the underlying action. The Court discusses below each factor in turn.

First, principles of judicial economy support transferring these actions to the issuing court. The underlying action has been pending for more than a year and a half, and discovery appears to have been extensive and to have raised many disputes that have been resolved by a magistrate judge in that district court. Some of the issues briefed by the parties here overlap with those already decided in the SDNY

Litigation. That Court is much more familiar with the history of the litigation among these parties, and with the claims and defenses currently outstanding. The legal issues arising under Montana law are intertwined with other discovery issues, making it difficult to rule on the Montana law issues without entering into ground already plowed in the SDNY. Thus, the SDNY is in the best position to rule on the motions.

Second, the risk of issuing an inconsistent ruling is high, and weighs strongly in favor of transferring the actions to the issuing court. The parties here disagree on the scope of prior orders issued in the SDNY Litigation. For example, in briefing the parties disagree on the meaning of an order from the presiding judge, Judge McMahon, regarding discovery, as well as an order from Judge Cott, who has presided over various discovery disputes in the SDNY Litigation. The parties argue that this Court needs to interpret or apply these prior orders to resolve these actions, but attempting to do so could lead to inconsistent rulings.

Third, issues regarding the scope of discovery are more properly resolved by the issuing court which is responsible for case management

of the underlying litigation. Although this issue in MC 16-2 is framed as a Rule 45 issue, it concerns an attempt to claw back documents, which is more appropriately considered in a Rule 26 context. Additionally, many of the arguments in both actions involve interpreting the proper scope of discovery and deciding whether the materials are relevant, overly burdensome, or disproportionate to the underlying litigation. These are determinations that should be made in the SDNY Litigation.

At least one other discovery dispute, that was initially litigated by these parties in a compliance district, was subsequently transferred to the SDNY. *See Amtrust North America, Inc., et al.,* Civil Action No. 15-mc-00190-RM (D. Colo. Jan. 4, 2016).

For all these reasons, the Court concludes that there are exceptional circumstances that warrant transfer to the issuing court.

## V. <u>CONCLUSION</u>

Based on the foregoing, IT IS ORDERED that:

(1) In MC 16-1-BLG-CSO, the Clerk of Court shall TRANSFER the Motion to Enforce Subpoena and Compel Discovery to United States District Court for the Southern District of New

York, as the issuing court under the caption *AmTrust North America, Inc., et al. v. Safebuilt Insurance Services, Inc., et al.*, Civil Action No. 14-cv-9494 (CM) and shall then close the file in this District;

(2) In MC 16-2-BLG-CSO, the Motion to Transfer the pending motions is GRANTED. The Clerk of Court shall TRANSFER the pending motions to United States District Court for the Southern District of New York, as the issuing court under the caption *AmTrust North America, Inc., et al. v. Safebuilt Insurance Services, Inc., et al.*, Civil Action No. 14-cv-9494 (CM) and shall then close the file in this District.

DATED this 12th day of April, 2016.

/s/ *Carolyn S. Ostby*
United States Magistrate Judge